JOHNNY BRUCE COMPANY, Petitioner-Appellee, *v.* THE CITY OF CHAMPAIGN *et al.*, Respondents.—(JOHN M. SCHORIE *et al.*, Respondents-Appellants.)

(No. 12364;

Fourth District—December 30, 1974.

Franklin, Flynn & Palmer, of Champaign (Leonard T. Flynn, of counsel), for appellants John M. and Judith H. Schorie.

Dobbins, Fraker & Tennant, of Champaign (French L. Fraker, of counsel), for appellant Champaign Park District.

Thomas, Mamer & Haughey, of Champaign (Roger E. Haughey, of counsel), for appellee.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

Johnny Bruce Company, a corporation, as the owner of a certain 73-acre tract of real estate located in Champaign County and within 1½ miles of the city of Champaign, formulated a Planned Unit Development for its real estate. This PUD plan was submitted to the city of Champaign Plan Commission in February 1973 for approval under the terms of its general zoning ordinance as adopted in 1965 and as amended insofar as its related to PUD by ordinance 1086 adopted in November 1971. Objections were presented by persons in opposition to the approval of the PUD and by those objections they sought to invoke the provisions of section 11—13—14 of the Municipal Code (Ill. Rev. Stat. 1971, ch. 24, par. 11—13—14). This statute requires a vote of two-thirds of the city council for approval of an amendment to a zoning ordinance in the event that objections are filed by 20 percent of the affected adjoining or adjacent property owners. The general ordinance of the city of Champaign obviously patterned after this statutory provision required a favorable vote of two-thirds in the event of objections to a proposed change. In each instance, the two-thirds favorable vote is required in the event of an "amendment" to the zoning ordinance and the regulations imposed and the districts created by the ordinance.

The appellants, John M. Schorie and Judith H. Schorie and Champaign Park District, were objectors and adjacent property owners. On March 28, 1973, the Plan Commission, by a vote of 4-1, recommended approval of the PUD to the city council. On April 3, 1973, the city council considered the recommendation and a motion to approve the PUD received four favorable votes and three votes were cast against it.

This complaint for declaratory judgment followed that action. In the complaint plaintiff alleges that the city "believes a favorable vote of

two-thirds of councilmen is necessary for approval of the plan." Plaintiff sought a declaration that its preliminary PUD plan could be approved by a mere majority vote. The circuit court so held. The court concluded that the PUD plan did not constitute an amendment to the zoning ordinance but rather, by analogy to a special-use ordinance, was a legislative procedure authorized under ordinance 1086 of the city and that ordinance was independent of, and in no way dependent upon, the general zoning ordinance.

Section 17 of ordinance 1086 amending the 1965 zoning ordinance, section 17, article VII, provides in part as follows:

"h. *Council Action on Preliminary Application*

Approval of the preliminary plan by the City Council shall constitute approval of the general arrangement of the plan, the provisions submitted by the applicant, and a waiver of only those items of policy or ordinance which have been brought specifically to the attention of the Plan Commission. Such approval shall be valid for six (6) months. In its discretion and for good cause, the City Council may extend for an additioal [sic] (6) months, the approval of the preliminary plan.

"i. *Final Application Submission*

Within six (6) months following the approval of the preliminary development plan by the City Council, the applicant shall file the plan in accordance with the procedures for filing zoning amendments. Five (5) copies of the final development plan shall be filed containing all information, plans and data as required herein. Such submission shall be accompanied by a second fee equal to that required for petitioning for amendment to this ordinance."

It is provided specifically that the final plan may be approved by a majority vote of the city council.

The city of Champaign is a municipality which has a population of more than 25,000 and is, therefore, a home-rule unit under the provisions of article VII, section 6(a), of the 1970 constitution. This court requested supplemental briefs upon the issue of whether the exercise of zoning authority by a home-rule unit is dependent upon State enabling legislation or limited by it. Excellent briefs have been filed by counsel upon this issue.

██ During the time consumed in the appellate process, the land here involved has been annexed to the city of Champaign and the time for the final approval of a preliminary plan, if the same was approved upon receiving a majority vote, has expired. Thus the passage of time has rendered moot the extraterritorial-zoning-authority issue as well as the final approval of the preliminary plan. It is necessary, however, that we

consider the application of the home-rule power to zoning in our disposition of this case.

■■ Under the language of our 1970 constitution, a home-rule unit as defined in the cited section is authorized to "exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; * * *." The parties in their supplemental briefs are in agreement that this grant of power encompasses zoning. We agree. In *La Salle National Bank v. County of Cook*, 12 Ill.2d 40, 46, 145 N.E.2d 65, the Illinois Supreme Court observed:

> "It is well established that it is primarily the province of the municipal body to determine the use and purpose to which property may be devoted, and it is neither the province nor the duty of the courts to interfere with the discretion with which such bodies are vested unless the legislative action of the municipality is shown to be arbitrary, capricious or unrelated to the public health, safety and morals."

Again, in *Treadway v. City of Rockford*, 24 Ill.2d 488, 493-94, 182 N.E.2d 219, the court stated:

> "Zoning lies primarily within the province of the municipality, and it is neither the province nor the duty of courts to interfere with the discretion with which the municipal authorities are vested unless the action of the municipal authorities is shown to be unrelated to the public health, safety, and morals."

Kratovil and Ziegweid, *Illinois Municipal Home Rule and Urban Land— A Test Run of the New Constitution*, 22 De Paul L. Rev. 359, 380 (1972), discuss the applicability of home-rule provisions to zoning, and the authors quote from Antieau, Municipal Corporation Law § 3.35 (1968), discussing a Pennsylvania Supreme Court case as follows:

> " 'Surely, there are few matters which are of less statewide concern and which are more local in scope than zoning inside the City of Philadelphia * * * there can be no reasonable dispute that where, as in the instant case, the Council acts on a matter which is of purely local concern in a manner inconsistent with a State law, the ordinance must prevail.' "

In the law-review article it is suggested that Colorado, California, Ohio, Minnesota, Wisconsin and New York have all determined zoning to be a matter of local concern rather than State concern under the variable home-rule provisions found in those states. See also Institution of Government and Public Affairs, Forrest, *Improved Land Use Regulation for the Home Rule Municipality.*

In *Rozner v. Korshak*, 55 Ill.2d 430, 435, 303 N.E.2d 389, as well as in

many other cases, the Illinois Supreme Court has recognized the broad grant of powers given home-rule units and in the cited case specifically notes that such powers "are in addition to the powers heretofore or hereafter granted by the General Assembly to other municipalities." In *Kanellos v. County of Cook*, 53 Ill.2d 161, 166, 290 N.E.2d 240, our supreme court discusses the home-rule provision of the new constitution and states:

> "The concept of home rule adopted under the provisions of the 1970 constitution was designed to drastically alter the relationship which previously existed between local and State government. Formerly, the actions of local government units were limited to those powers which were expressly authorized, implied or essential in carrying out the legislature's grant of authority. Under the home-rule provisions of the 1970 constitution, however, the power of the General Assembly to limit the actions of home-rule units has been circumscribed and home-rule units have been constitutionally delegated greater autonomy in the determination of their government and affairs. To accomplish this independence the constitution conferred substantial powers upon home-rule units subject only to those restrictions imposed or authorized therein."

■■ Legislative provisions heretofore existing limiting the authority of municipalities that are now home-rule units may be superseded by valid legislative action of a home-rule unit. See *Clarke v. Village of Arlington Heights*, 57 Ill.2d 50, 309 N.E.2d 576.

■■ It is thus apparent that the city of Champaign in the adoption of its general zoning ordinance or an amendment thereto relating to PUD is not limited in the exercise of its power by the then-existing enabling statutes. It has plenary power in this regard. The precise procedure for the exercise of this power and the resolution of zoning problems must be left to the local exercise of this new constitutional grant of power. See *People ex rel. City of Salem v. McMackin*, 53 Ill.2d 347, 291 N.E.2d 807.

■■ The preliminary plan cannot ripen into an approved final plan under the language of the ordinance because of valid time limitations. It is clear that a PUD of an area this large can and will have substantial impact upon a municipality. The demand for municipal services and the necessity for planning for those services by the city and other affected governmental units, *i.e.*, schools, park districts, etc., clearly makes the time sequence for submission of the preliminary plan and approval of the final plan set forth in the ordinance reasonable. It necessarily follows that the declaratory judgment entered below upon the facts now existent would only affect future rights and that the rights adjudicated are now essentially moot as to the then actual controversy. (*Berg v. City*

*of Chicago,* 97 Ill.App.2d 410, 240 N.E.2d 344.) Although the area involved is now annexed and the time for final approval of the plan has expired, the issue presented by this appeal will obviously recur. Furthermore, the usual time for perfection and disposition of an appeal would effectively deprive plaintiff of an available appellate review. We are not required to dismiss the case even though the issues are technically moot if the issues are likely to recur and involve matters of public concern. See *In re Estate of Brooks,* 32 Ill.2d 361, 205 N.E.2d 435.

The action of the city council in adopting ordinance 1086 in November 1971 as an amendment to its general zoning ordinance was to effect the repeal of a prior section 17 of article VII of that ordinance and add the new section. The language of ordinance 1086 did not contemplate approval of PUD by an amendment to the general zoning ordinance as was required by the predecessor provision. As we have noted, final approval was expressly conditioned only upon receipt of a majority vote. We thus agree with the determination by the trial court that approval of the preliminary plan would require only a majority vote. As indicated, however, notwithstanding the declaratory judgment, final approval of this specific preliminary plan cannot be obtained under the time sequence set forth in the ordinance.

The judgment of the circuit court of Champaign County declaring that a majority vote of the city council was sufficient to approve the preliminary plan is affirmed.

Judgment affirmed.

SMITH, P. J., and SIMKINS, J., concur.